**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**UNITED STATES OF AMERICA,**

**v.**                                                        **Criminal Action No. 2:07cr40**

**MICHAEL DAVID TURNER,**

        **Defendant.**

## OPINION AND ORDER

On June 6, 2007, the court conducted a hearing to address defendant's motion to suppress evidence obtained during a search of his residence.  Defendant's residence was searched pursuant to an anticipatory warrant obtained after Norfolk Police discovered a Federal Express ("FedEx") package containing one kilogram of cocaine en route to defendant's residence.  For the reasons stated on the record during the hearing on defendant's motion to suppress, and as set forth in more detail below, the court **DENIES** defendant's motion.

Defendant, Michael Turner, is the named lessee of 1105 Hugo Street, Norfolk, Virginia.[1] On the morning of September 21, 2006, at the FedEx receiving facility in Norfolk, the Norfolk Police Department intercepted a package sent from Joe Williams in Tucson, Arizona, addressed to Gary Williams at 1105 Hugo Street, Norfolk, Virginia.  A police drug dog alerted on the package, a warrant was obtained, the package was opened pursuant to such warrant, and one kilogram of cocaine was found inside.  As indicated on the shipping label, the package was sent "FedEx Priority Overnight" and was therefore scheduled for delivery on the same morning that

---

[1] It is undisputed that the Norfolk Police were not aware of Turner's status as lessee of 1105 Hugo Street on the day that the search warrant for such residence was executed.

the cocaine was discovered (Mo. to Suppress, Def. Ex. 3).  Based upon the discovery of the

kilogram of cocaine, which the government represents is worth approximately $20,000, the

Norfolk Police obtained an anticipatory search warrant for 1105 Hugo Street; the warrant

"anticipated" a controlled delivery of the package by Norfolk Police at approximately 1 p.m. on

that same day and required that prior to the warrant's execution, "someone of authority from

1105 Hugo Street Norfolk, Virginia has accepted [the package]" (Mo. to Suppress, Def. Ex. 2).

After obtaining the anticipatory warrant, a Norfolk Police investigator disguised as a

FedEx carrier attempted delivery of the package to 1105 Hugo Street; however, no one answered

the door, prompting the disguised officer to leave the package on the porch.  Approximately one

minute later, a "white male . . . wearing a white tank top t-shirt, white baseball cap, long jean

shorts, sunglasses" exited the front door of 1105 Hugo Street; the individual "had a cigarette in

his mouth" and "a large tattoo on [his] right arm in black and white" (Mo. to Suppress, Def. Ex.

1 at 46-47).  The individual looked to the left and to the right and then took the package inside

the residence; such individual was later identified as the defendant, Michael Turner.

Approximately four minutes after the package was taken inside by the defendant, the police

executed the search warrant for 1105 Hugo Street.  Upon entering the residence, the officers

located the unopened package on the defendant's bed.[2]  Also located in such bedroom was

approximately 400 grams of cocaine, nine pounds of marijuana, a semi-automatic firearm, and

sandwich bags near a digital scale that was covered with white residue.

Defendant's motion seeks to suppress the evidence collected during the search of his

---

[2] The bedroom was described by the police as the master bedroom, and the defendant's
checkbook, with both his name and the address 1105 Hugo Street, was found on the dresser.
Based on the arguments advanced at the hearing, "Gary Williams" appears to be a fictional
name.

residence, alleging that the search was unlawful: (1) because the magistrate did not have probable cause to believe that the triggering event would occur; (2) because the "triggering event" failed to occur as prior to executing the search warrant, the police were unaware that the individual who took the package inside was "someone of authority"; and (3) because the package was not on a "sure course" to its destination due to the fact that a member of the Norfolk Police, rather than a FedEx employee, delivered the package.

The use of anticipatory warrants in situations where drugs or other illegal items are in transit through either the mail or via private delivery company was recently confirmed as constitutional by the United States Supreme Court.  United States v. Grubbs, 547 U.S. 90, 126 S.Ct. 1494 (2006).  In Grubbs, the Court rejected a general challenge to the constitutionality of anticipatory warrants and approved the use of such a warrant on the facts before the Court; Grubbs involved a controlled delivery of a package containing child pornography by an "undercover postal inspector."  Id. at 1498.  The Grubbs opinion set forth the following rule:

> [F]or a conditioned anticipatory warrant to comply with the Fourth Amendment's requirement of probable cause, two prerequisites of probability must be satisfied. It must be true not only that if the triggering condition occurs "there is a fair probability that contraband or evidence of a crime will be found in a particular place," but also that there is probable cause to believe the triggering condition will occur.

Id. at 1500 (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).

Applying Grubbs to the instant facts, the court rejects defendant's claim that there was not probable cause for the magistrate "to believe the triggering condition will occur."  Id.   The probable occurrence of the triggering condition, successful delivery of the package to 1105 Hugo Street, was supported by the assertion in the affidavit that: "At approximately 1300 hour [sic], Investigator M.S. Joseph posing as a Federal Express delivery driver will deliver the brown box . . . to 1105 Hugo Street" (Mo. to Suppress, Def. Ex. 2).  Although there was some possibility

3

that the package would be rejected, such occurrence was unlikely as the box contained $20,000

worth of cocaine and was sent via FedEx overnight service in order to effectuate next day

delivery.  See Grubbs, 126 S.Ct. at 1500 ("[T]he occurrence of the triggering condition-

successful delivery of the videotape to Grubb's residence-would plainly establish probable cause

for the search. . . .  Although it is possible that Grubbs could have refused delivery of the

videotape he had ordered, that was unlikely.").  Additionally, the speed of the Norfolk Police's

submission of the application for the anticipatory warrant, the second warrant necessary as part

of the expedited investigation spanning just a few hours, supports the affiant's claim that

delivery could be effectuated by a disguised officer shortly after the package was "due" for

delivery.[3]  The fact that the package containing $20,000 worth of cocaine was on a "sure course"

to a defined address prior to any police involvement and was thereafter put back on such "sure

course" by a police-controlled delivery, is plainly distinguishable both from cases where the

authorities, as part of a sting, mail the contraband to a defendant's residence as well as cases

where contraband is intercepted while being transported to an uncorroborated location by

members of a conspiracy.

     For example, in Grubbs, the contraband at issue was ordered from a website operated by

---

[3] Defendant argues that, prior to delivery, the police should have conducted further investigation in order to determine who resided at 1105 Hugo Street.  Additionally, defendant suggested calling the residence to confirm that someone was available to accept the package. Although such suggestions would plainly simplify the probable cause determination, on these facts, they are patently unrealistic.  First, the officers were constrained by a very limited time-frame due to the fact that the scheduled delivery of the package was just hours after the cocaine was discovered and delivery in the late afternoon or on the following day when the package was specifically designated as "Priority Overnight" and scheduled for morning delivery would have drastically increased the probability that the intended recipient would grow suspicious and deny the package; such potential for rejection is bolstered by the public's ability to track FedEx packages over the internet.  Second, a call to 1105 Hugo Street to confirm that someone was available to accept routine delivery of a FedEx package would certainly have raised a red flag.

an undercover postal inspector that purported to sell child pornography; the factual showing

necessary to establish probable cause was therefore likely higher in such case as the potential for

abuse is greater when law enforcement officers represent the origination point of the contraband.

Grubbs, 126 S.Ct. at 149.[4]  Also distinguishable from the instant facts, in United States v.

Leidner, 99 F.3d 1423, 1424 (7th Cir. 1996), Steven Sapp ("Sapp") was apprehended by police

while transporting 200 pounds of marijuana in the trunk of a rental car; Sapp claimed that he was

merely a courier and agreed to help police apprehend the individual to whom he was delivering

the drugs.  Because the intended delivery location was based only upon Sapp's word and Sapp

could simply have named anyone he knew in order to deflect responsibility from himself,

investigation into his story was critical prior to the issuance of a warrant.  Id. at 1429-30.  Here,

although the government concedes that virtually no investigation was made into 1105 Hugo

Street prior to the controlled delivery, the facts are distinct from Leidner, as the delivery location

was confirmed on a FedEx package containing $20,000 worth of cocaine; thus, here, the package

was on a "sure course" to a sure destination, whereas in Leidner both the manner of delivery and

---

[4] In United States v. Dennis, 115 F.3d 524 (7th Cir. 1997), the Seventh Circuit recognized the potential for abuse with anticipatory warrants if the government is permitted to "create" probable cause by mailing a package to a place to be searched; the court explained:

> [B]ecause the contraband is not presently located at the place to be searched at the time an anticipatory warrant is issued and because probable cause depends on contingent future events, anticipatory warrants present greater potential for abuse than other warrants.  Most notably, the government or a third party, acting either intentionally or accidentally, could mail a controlled substance to a residence to create probable cause to search the premises where it otherwise would not exist. Thus, to prevent law enforcement authorities from creating the circumstances which give rise to probable cause to search, the Ninth Circuit held that probable cause to support an anticipatory warrant does not exist unless a sufficient nexus between the parcel and the place to be searched exists.

Id. at 529-30 (emphasis added) (citations omitted).  The Seventh Circuit thereafter cited cases indicating that in several circuits, including the Fourth Circuit, the requisite nexus can be established by "showing that the contraband was on a 'sure course' to the destination to be searched."  Id. at 530.

location of delivery were far less reliable.  Accordingly, on the distinct facts before the court, the high dollar value of the drugs involved, the likelihood that delivery was anticipated based on the use of an overnight delivery service, and the Norfolk Police's apparent ability to effectuate a controlled delivery within hours of the scheduled delivery time is sufficient to establish probable cause that the triggering condition, the delivery and acceptance of the package, would occur.

Defendant's second claim, that the triggering condition never occurred because the Norfolk Police were unaware whether the individual who carried the package from the porch to the inside of the residence qualified as "someone of authority from 1105 Hugo Street" is likewise unavailing.  Although defendant argues that without knowledge of such person's identity it was impossible for the triggering condition to occur, the court adopts the government's construction of the phrase "someone of authority" as merely requiring that an adult present inside the residence accept the package.  As noted above, the Norfolk Police appear to have acted properly and attempted to effectuate delivery as indicated in the affidavit in support of the search warrant; that is, at approximately 1 p.m. on September 21, 2006, an undercover officer knocked on the door of 1105 Hugo Street and when there was no answer, the package was left on the doorstep. The package was plainly not "accepted" at this point by someone of authority from 1105 Hugo Street, nor would it have been if an unknown individual walked up from the street and took the package.  However, here, an adult male emerged from inside the house about a minute after the package was delivered, looked to his left, and to his right, and then brought the package inside. The court considers the triggering event to have occurred at this time.  See Grubbs, 126 S.Ct. at 1497 (conditioning execution of the search warrant on "the parcel being received by a person(s)

6

and [being] physically taken into the residence").[5]

Defendant's final claim, that package was no longer on a "sure course" to its destination, after being intercepted by Norfolk Police, similarly fails.  At oral argument, defendant appeared to concede that if a FedEx delivery driver delivered the package to 1105 Hugo Street, it would qualify as being on a "sure course" to its destination; however because the package was delivered by police, defendant claims it no longer qualifies as such.  See United States v. Goodwin, 854 F.2d 33, 36 (4th Cir. 1988) (quoting United States v. Hale, 784 F.2d 1465, 1468 (9th Cir.1986)) (adopting the standard articulated by the Ninth Circuit in Hale, "which upheld an anticipatory search warrant for child pornography . . . explain[ing] that where the contraband to be seized 'is on a sure course to its destination, as in the mail, prior issuance of a warrant is permissible'"); United States v. Dornhofer, 859 F.2d 1195, 1198 (4th Cir. 1988) ("The magistrate conditioned the validity of the search warrant on the contraband being so placed in the mail.  When [the inspector] placed the contraband in the mail, the requirement of Goodwin that the contraband was on a sure course to its destination was met.").  Although defendant attempts to equate "sure course" with an item being placed in the mail, the Fourth Circuit has never defined "sure course" as requiring contraband to be in transit in the mail or through a delivery service such as FedEx.   According to this court's construction of the "sure course" requirement, just as an item in the mail is plainly on a "sure course" to its destination, so is the

---

[5] Just like there was a slight possibility that the package would be rejected, there was a slight possibility that it would never be retrieved from the porch.  However, when the package was taken inside 1105 Hugo Street by an adult who emerged from inside the house it was "accepted."  The court fails to recognize the distinction between a package handed over to whatever adult answers the door at the delivery location and a package left on a doorstep that police surveillance establishes is thereafter taken inside by an adult that emerges from such residence.  In either scenario, proof of "authority" is established by the fact that the recipient: (1) is an adult; and (2) emerges from inside the residence.

same package in the possession of the Norfolk Police when the planned delivery of such item by an undercover officer is just hours away.  See United States v. Upton, 763 F. Supp. 232, 239 (S.D. Ohio 1991) (recognizing that a package does not need to be in the mail to be on a "sure course" to its destination and concluding that "once the package was placed in Corporal Powell's possession for delivery it was on as sure a course to its destination at 97 Rumsey Road as if it had been placed in the mail or any other method had been used").  As mentioned previously, supervised delivery by a drug courier can also meet such standard.  See Leidner, 99 F.3d at 1429 (recognizing that although government controlled deliveries are more reliable than regular deliveries within the course of a drug conspiracy, delivery by a drug courier "under the direction and supervision of the government" was sufficient to establish that the drugs were on a "sure course" to their destination).

Here, there is no reason to draw a distinction between delivery by an undercover police officer and delivery by a FedEx employee under the direction and supervision of the police.[6] Although it is true that in some circumstances "anticipatory warrants present greater potential for abuse than other warrants" because law enforcement officers often pose as the originators of contraband as part of sting operations, United States v. Dennis, 115 F.3d 524, 529 (7th Cir. 1997), here, the police did not "mail" contraband to defendant, but rather, intercepted a package already in the process of being delivered to 1105 Hugo Street.  Defendant has failed to advance any facts suggesting that had the package not been intercepted by authorities, it would not have been delivered to the very same residence, 1105 Hugo Street, Norfolk, Virginia, on the very same day that it was so delivered.  Thus, on the morning of September 21, 2006, prior to any

---

[6] The rule espoused by defendant would encourage police and federal investigators to put innocent civilians in harms way when large quantities of drugs are intercepted prior to delivery.

police involvement, the package was on a "sure course" to 1105 Hugo Street; after such package was intercepted, it was placed back on its "sure course" when the Norfolk investigator swore before the magistrate that the police would execute a controlled delivery of such package to its intended destination within hours of the issuance of the anticipatory warrant.  Accordingly, defendant's claim that the package was not on a "sure course" because it was delivered by police fails.[7]

Although the court finds that the anticipatory warrant was properly issued by the magistrate, even if the magistrate lacked probable cause to determine that the package would be delivered and accepted by a person of authority at 1105 Hugo Street, the good faith exception justifies reliance on the warrant by the Norfolk Police.  The good faith exception permits officers to rely on a warrant issued by a magistrate even if such warrant is defective, unless: (1) the affidavit contains a "knowing or reckless falsity"; (2) the magistrate acted as a "rubber-stamp" for police; (3) the affidavit is "so lacking in indicia of probable cause" that "belief in it's existence is entirely unreasonable"; or (4) that warrant is so facially deficient it cannot be reasonably relied upon.  United States v. Leon, 468 U.S. 897, 914-15, 923 (1984).  Here, the affidavit was not inaccurate or "so lacking in the indicia of probable cause," nor did the officers engage in willful or negligent conduct of any kind; rather, a narcotics interdiction team performing routine screening of packages at a FedEx facility discovered drugs in transit and

---

[7] Even had the Fourth Circuit previously required contraband to be in the mail to qualify as being on a "sure course" to its destination, Grubbs appears to overrule such standard as it approves of "Officers from the Postal Inspection Service arrang[ing] a controlled delivery of a package" by an undercover postal inspector.  Grubbs, 126 S.Ct. at 1497.  Controlled delivery by an undercover federal law enforcement agent is no different than delivery by an undercover police officer.  Such similarity is not altered simply because a federal law enforcement agent happens to work for the postal service; he remains a law enforcement agent and not a delivery person.  Furthermore, the individual who performs the menial task of actually dropping off the package has little impact on the relevant legal analysis, so long as such individual is reliable.

thereafter pursued the investigation of such criminal activity in their usual manner, they applied

for an anticipatory warrant and thereafter "abided by its terms" by not executing the warrant

until after the package was accepted.  Id. at 920-22; see Leidner, 99 F.3d at 1425 ("Anticipatory

search warrants are peculiar to property in transit.  Such warrants are issued in advance of the

receipt of particular 'property' (usually contraband) at the premises designated in the warrant

based on probable cause that the property will be located there at the time of the search.").  On

these facts, it appears patently reasonable for officers to have believed that they were executing a

lawful search of 1105 Hugo Street as within a span of hours: (1) the officers were alerted to the

potential presence of illegal drugs in a FedEx overnight package; (2) a warrant to open the

package was obtained; (3) the package was opened and the contents were field tested and

confirmed to be one kilogram of cocaine; (4) a second warrant for the search of the residence

plainly indicated on the package was issued and it was conditioned upon acceptance of the

package; and (5) after a  controlled drop-off of the package, the package was taken inside the

listed residence by an adult male.  Faced with a rapidly developing scenario where time was of

the essence in order to minimize the recipient's suspicion, it is difficult to conceive of what

additional actions the Norfolk Police should have taken in support of their search of 1105 Hugo

Street; accordingly, the officers reasonably relied upon the magistrate's decision to issue the

warrant.

   Because defendant's motion fails to establish that the anticipatory was invalid, or, in the

alternative, that if such warrant was improperly issued, that the good faith exception does not

justify reliance on the warrant, defendant's motion to suppress is **DENIED**.

   The Clerk is **REQUESTED** to send a copy of this Order to the Assistant United States

Attorney and to counsel of record for the defendant.

**IT IS SO ORDERED.**

_____/s/_____
Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
June   14   , 2007